**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-1689

———————

BORIS KHAZIN,

Appellant

v.

TD AMERITRADE HOLDING CORPORATION;
TD AMERITRADE INC;
AMERIVEST INVESTMENT MANAGEMENT
COMPANY; LULE DEMMISSIE, INDIVIDUALLY,

———————

On Appeal from the United States District Court
for the District of New Jersey

(D.C. Civ. No. 2:13-cv-04149)

District Judge: Honorable Susan D. Wigenton

———————

Argued: October 23, 2014

Before: FUENTES, GREENBERG, and COWEN, *Circuit Judges*

(Opinion Filed: December 08, 2014)

Keith N. Biebelberg, Esq. **ARGUED**
Biebelberg & Martin
374 Millburn Avenue
Schoolhouse Plaza
Millburn, NJ 07041
*Attorneys for Appellant*

Aaron P. Taishoff, Esq. **ARGUED**
Baritz & Colman
The Woolworth Building
233 Broadway, Suite 2020
New York, NY 10279
*Attorneys for Appellees*

---

OPINION OF THE COURT

---

FUENTES, Circuit Judge.

Alleging that TD Ameritrade had fired him for reporting securities violations to his supervisor, Boris Khazin filed suit for whistleblower retaliation pursuant to the Dodd-Frank Act. Although Khazin had signed an arbitration agreement with TD Ameritrade, he argued that it had been nullified by another provision in Dodd-Frank that prohibits the enforcement of predispute arbitration agreements in certain whistleblower disputes. The District Court disagreed, compelled arbitration, and dismissed the complaint. Khazin's appeal raises issues of first impression in this Circuit surrounding the proper interpretation of Dodd-Frank's restrictions on predispute arbitration agreements. Ultimately,

though, Khazin's whistleblower claim is subject to arbitration for the simple reason that it is covered by none of these restrictions.

## I. Background of the Case

### A. Factual Allegations

Appellant Boris Khazin is a financial services professional and former employee of Appellees TD Ameritrade, Inc. and Amerivest Investment Management Company (collectively with other Appellees, "TD"). When Khazin began working for TD, the parties executed an employment agreement in which they agreed to arbitrate all disputes arising out of Khazin's employment.

At TD, Khazin was responsible for performing due diligence on financial products offered to TD customers. When he eventually discovered that one of TD's products was priced in a manner that did not comply with the relevant securities regulations, he reported this violation to his supervisor, Lule Demmissie, and recommended changing the price to remedy the violation.

In response, Demmissie instructed Khazin to conduct an analysis of the "revenue impact" of his proposed change. The analysis revealed that although remedying the violation would save customers $2,000,000, it would cost TD $1,150,000 in revenues and negatively impact the balance sheet of one of Demmissie's divisions. After reviewing these results, Demmissie allegedly told Khazin not to correct the problem and to stop sending her emails on the subject. When Khazin subsequently approached her to renew his initial

3

recommendation, she again informed him that no change would be made.

Over the next few months, Demmissie and TD's human resources department confronted Khazin about a purported billing irregularity that, according to him, was unrelated to his duties and turned out to be nonexistent. Nevertheless, Khazin was told that he could no longer be trusted, and his employment was terminated.

## B. Procedural History

Khazin filed an amended complaint in the Superior Court of New Jersey, asserting state-law claims and a violation of the Dodd-Frank Act. All of Khazin's claims were premised on the allegation that he had been terminated in retaliation for "whistleblowing." The state court held that federal courts had exclusive jurisdiction over the Dodd-Frank claim, dismissed that claim without prejudice for lack of subject-matter jurisdiction, and compelled arbitration of the state-law claims.

Khazin reasserted his Dodd-Frank claim in a complaint filed in the District of New Jersey. After one round of motion practice and amendments, TD filed a motion to dismiss the amended complaint and to compel arbitration pursuant to Khazin's employment agreement. In response, Khazin contended that a provision of the Dodd-Frank Act, which we will call the "Anti-Arbitration Provision," and its associated regulations prevented TD from compelling the arbitration of his whistleblower retaliation claim. The Anti-Arbitration Provision states that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires

4

arbitration of a dispute arising under this section." 18 U.S.C. § 1514A(e)(2). According to TD, however, the Anti-Arbitration Provision did not forbid the arbitration of the particular type of retaliation claim that Khazin had brought against it. Even if it did cover such claims, TD continued, the provision did not apply retroactively to bar the enforcement of arbitration agreements executed before the passage of the Act, such as the agreement between Khazin and TD.

The District Court granted TD's motion on the ground that the Anti-Arbitration Provision did not prohibit the enforcement of arbitration agreements that were executed before Dodd-Frank was passed. Specifically, the District Court applied the analysis articulated in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and concluded that nullifying existing contractual rights to arbitration would violate the presumption against retroactivity. It did not pass upon the question of whether the Anti-Arbitration Provision covered the specific retaliation claim advanced by Khazin. Khazin then filed the instant appeal.[1]

---

[1] We have jurisdiction to review the District Court's order pursuant to 9 U.S.C. § 16(a)(3). The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. "'We exercise plenary review over [the] District Court's decision to compel arbitration.'" *Litman v. Cellco P'ship*, 655 F.3d 225, 230 n.6 (3d Cir. 2011) (quoting *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 531 (3d Cir. 2005)).

5

## II. Discussion

On appeal, Khazin's primary contention is that the District Court erred in finding that his arbitration agreement was enforceable notwithstanding the Anti-Arbitration Provision and the general anti-arbitration spirit of the Dodd-Frank Act. This argument fails: neither the Anti-Arbitration Provision nor any other provision of Dodd-Frank prohibits the arbitration of the sort of claim that Khazin chose to bring against TD. The District Court acknowledged that TD had made this argument but did not address it further. It is, however, "an accepted tenet of appellate jurisdiction that we 'may affirm a judgment on any ground apparent from the record, even if the district court did not reach it.'" *Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010) (quoting *Kabakjian v. United States*, 267 F.3d 208, 213 (3d Cir. 2001)).

### A. Statutory Framework

The Dodd-Frank Wall Street Reform and Consumer Protection Act spans thousands of pages and amends a number of statutes designed to regulate the financial industry. Pub. L. No. 111-203, 124 Stat. 1376 (2010). Of principal importance to this appeal are Dodd-Frank's amendments to the Securities Exchange Act of 1934, which "establish[] a corporate whistleblowing reward program, accompanied by a new provision prohibiting any employer from retaliating against 'a whistleblower' for providing information to the [Securities and Exchange Commission ("SEC")], participating in an SEC proceeding, or making disclosures required or protected under [the] Sarbanes-Oxley [Act of

6

2002] and certain other securities laws." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1174 (2014) (citing 15 U.S.C. § 78u-6(a)(6), (b)(1), (h)). The prohibition on retaliation includes a private right of action for aggrieved whistleblowers. *See* 15 U.S.C. § 78u-6(h)(1)(B)(i). As Khazin asserts in his complaint and reaffirmed at oral argument, this is the cause of action he asserts against TD. For the sake of brevity, we will refer to it as the "Dodd-Frank" cause of action.

Before Dodd-Frank was enacted, whistleblowers who suffered retaliation for reporting violations of the securities laws were not without recourse. The Sarbanes-Oxley Act of 2002 established a private right of action for whistleblowers as well. *See* Pub. L. No. 107-204, § 806, 116 Stat. 745, 802 (codified at 18 U.S.C. § 1514A). The Sarbanes-Oxley and Dodd-Frank causes of action for whistleblowers are, however, "substantively different," and each has its "own prohibited conduct, statute of limitations, and remedies." *Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d 491, 497 (S.D.N.Y. 2014); *see also Lawson*, 134 S. Ct. at 1175. Notably, a whistleblower seeking to assert a Sarbanes-Oxley claim must first file an administrative complaint with the Secretary of Labor through the Occupational Safety and Health Administration ("OSHA"). *See* 18 U.S.C. § 1514A(b)(1)(A); 29 C.F.R. § 1980.103(c). The Dodd-Frank cause of action, by contrast, has no exhaustion requirement. *See* 15 U.S.C. § 78u-6(h)(1)(B). Moreover, while a Sarbanes-Oxley whistleblower may obtain "back pay, with interest," a Dodd-Frank whistleblower is entitled to "2 times the amount of back pay otherwise owed to the individual, with interest." *Compare* 18 U.S.C. § 1514A(c)(2)(B), *with* 15 U.S.C. § 78u-6(h)(1)(C)(ii).

7

The Dodd-Frank Act did not merely create a new cause of action for whistleblowers—it also appended the Anti-Arbitration Provision to the Sarbanes-Oxley cause of action. *See* Dodd-Frank Act, § 922, 124 Stat. at 1848. As a result, the relevant section of the United States Code now provides that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under th[at] section." 18 U.S.C. § 1514A(e)(2).[2] In addition to adding the Anti-Arbitration Provision to the Sarbanes-Oxley cause of action, Dodd-Frank also inserted an anti-arbitration provision with identical language into the whistleblower protections of the Commodity Exchange Act. *See* § 748, 124 Stat. at 1746 (codified at 7 U.S.C. § 26(n)(2)). A similar provision appears in the portion of Dodd-Frank that pertains to the Consumer Financial Protection Bureau, which is entitled the "Consumer Financial Protection Act of 2010." *See* §§ 1001, 1057, 124 Stat. at 1955, 2031 ("[N]o predispute arbitration agreement shall be valid or enforceable to the extent that it requires arbitration of a dispute arising under this section.") (codified at 12 U.S.C. § 5567(d)(2)).

---

[2] The immediately preceding paragraph, which Khazin does not invoke, similarly provides that "[t]he rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement." 18 U.S.C. § 1514A(e)(1). Because this paragraph and its analogues, 7 U.S.C. § 26(n)(1) and 12 U.S.C. § 5567(d)(1), do not affect the analysis, we do not address them further.

8

## B. The Arbitrability of Dodd-Frank Retaliation Claims

The text and structure of Dodd-Frank compel the conclusion that whistleblower retaliation claims brought pursuant to 15 U.S.C. § 78u-6(h) are not exempt from predispute arbitration agreements. As this is the only type of claim that Khazin asserts, nothing prevents TD from seeking to enforce their arbitration agreement.

The Anti-Arbitration Provision is expressly limited to a single category of disputes: those "arising under *this* section," meaning Section 1514A of the United States Code. 18 U.S.C. § 1514A(e)(2) (emphasis added). That section contains the Sarbanes-Oxley cause of action for retaliation against whistleblowers. *See id.* § 1514A(a)-(c). The Dodd-Frank cause of action, however, is not located in the same title of the United States Code, let alone the same section. *See* 15 U.S.C. § 78u-6(h).[3] As Khazin asserts only a Dodd-Frank

---

[3] To be sure, the Anti-Arbitration Provision and the Dodd-Frank cause of action for retaliation are both located in the same "section" of the Dodd-Frank Act, entitled "Sec. 922. Whistleblower Protection." 124 Stat. at 1841-48. But this is not the "section" to which the Anti-Arbitration Provision refers. The portion of Section 922 concerning the Anti-Arbitration Provision amends "Section 1514A of title 18, United States Code . . . by adding [that provision] at the end." § 922(c)(2), 124 Stat. at 1848. The portion of Section 922 that establishes the new cause of action for retaliation inserts that cause of action into "[t]he Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) . . . after section 21E." § 922(a), 124 Stat. at 1841. It would be nonsensical for the

9

claim, his dispute does not "arise under" the relevant section. *See Mathews v. Kidder, Peabody & Co.*, 161 F.3d 156, 162 (3d Cir. 1998) (holding that a plaintiff's claims "arise under" the statute that provides "the federal cause of action [he or she] alleges"). For the same reason, he cannot avail himself of the analogous provisions in the Commodity Exchange Act and Consumer Financial Protection Act, both of which apply only to disputes arising under their respective sections of the Code. *See* 7 U.S.C. § 26(n)(2); 12 U.S.C. § 5567(d)(2).

Recognizing that no provision expressly restricts the arbitration of Dodd-Frank retaliation claims, Khazin contends that a bill as massive as Dodd-Frank will inevitably contain gaps not intended by Congress. The fact that Congress did not append an anti-arbitration provision to the Dodd-Frank cause of action while contemporaneously adding such provisions elsewhere suggests, however, that the omission was deliberate. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally."). Indeed, the contrast is all the more glaring because the amendments to Sarbanes-Oxley, including the Anti-Arbitration Provision, are adjacent to the Dodd-Frank cause of action in the text of the Dodd-Frank Act. *See* § 922, 124 Stat. at 1841-48.

Khazin further argues that it would be counterintuitive for Congress to treat Sarbanes-Oxley claims differently than

word "section" in the Anti-Arbitration Provision to refer to Section 922 of the Act when Section 922 expressly places its constituent parts in separate "sections" of the Code.

Dodd-Frank claims, and that requiring the arbitration of his claim would undermine Dodd-Frank's broader purpose of enhancing protections for whistleblowers. As explained above, however, the Sarbanes-Oxley and Dodd-Frank causes of action differ significantly in a number of respects that might explain Congress's reluctance to exempt Dodd-Frank claims from arbitration. Moreover, "[s]tatutes are seldom crafted to pursue a single goal, and compromises necessary to their enactment may require adopting means other than those that would most effectively pursue the main goal." *Landgraf*, 511 U.S. at 286. For this reason, "[i]nvocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent." *Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 374 (1986). Congress's intent is clearly reflected in the text and structure of Dodd-Frank, which grant Khazin no right to resist arbitration.

This legislative choice must be respected, especially in light of the "liberal federal policy favoring arbitration agreements" embodied in the Federal Arbitration Act. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Courts are required to "enforce agreements to arbitrate according to their terms[,] . . . . even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). There is no such command here. Thus, although Congress conferred on whistleblowers the right to resist the arbitration of certain

11

types of retaliation claims, that right does not extend to Dodd-Frank claims arising under 15 U.S.C. § 78u-6(h).

The only two courts to have addressed the question have concluded that, for the reasons outlined above, whistleblowers may be compelled to arbitrate Dodd-Frank retaliation claims. *See Murray v. UBS Sec., LLC*, No. 12 Civ. 5914 (KPF), 2014 WL 285093, at *10-11 (S.D.N.Y. Jan. 27, 2014); *Ruhe v. Masimo Corp.*, SACV 11-00734-CJC(JCGx), 2011 WL 4442790, at *4 (C.D. Cal. Sept. 16, 2011). Khazin argues that the Fourth Circuit suggested otherwise in *Santoro v. Accenture Federal Services, LLC*, 748 F.3d 217 (4th Cir. 2014). But although *Santoro* contains broad language suggesting that "Dodd-Frank whistleblower claims are not subject to predispute arbitration," the Fourth Circuit confronted an entirely different issue and did not even mention the whistleblower provision codified at 15 U.S.C. § 78u-6. 748 F.3d at 222.

The Fourth Circuit's analysis of Dodd-Frank in *Santoro* does, however, have some relevance to the proper interpretation of the Anti-Arbitration Provision. Santoro was not a whistleblower; the claims he brought against his former employer arose under unrelated federal statutes. He nevertheless argued that certain anti-arbitration provisions enacted as part of Dodd-Frank nullified his arbitration agreement. As noted above, Dodd-Frank's amendments to the whistleblower protections in Sarbanes-Oxley and the Commodity Exchange Act provide (in identical language) that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." 7 U.S.C. § 26(n)(2); 18 U.S.C. § 1514A(e)(2). Seizing on the literal meaning of these provisions, Santoro argued that "Dodd-Frank invalidates in

12

*toto* all arbitration agreements by publicly-traded companies that lack a carve-out for . . . whistleblower claims, even if the plaintiff is not a whistleblower." 748 F.3d at 220 (footnote omitted). He bolstered his argument by drawing a contrast to the analogous provision in the Consumer Financial Protection Act, which prohibits predispute arbitration agreements only "*to the extent* that [they] require[] arbitration of a dispute arising under this section." 12 U.S.C. § 5567(d)(2) (emphasis added).

The Fourth Circuit rejected Santoro's interpretation of the anti-arbitration provisions, reasoning that Congress's purpose was not to "requir[e] every employer's arbitration agreement to carve out an exception for whistleblowers." *Santoro*, 748 F.3d at 223. Such a requirement would substantially amend the Federal Arbitration Act, and "'Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not one might say, hide elephants in mouseholes.'" *Id.* (quoting *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006)). Khazin does not make Santoro's argument, but it is, in any event, unpersuasive for the reasons articulated by the Fourth Circuit.

Khazin cites regulatory actions that are of no help to him either. In 2012, the SEC approved a proposed change to the arbitration rules of the Financial Industry Regulatory Authority ("FINRA"). *See* Order Approving a Proposed Rule Change Amending FINRA Rules 13201 and 2263 Relating to Whistleblower Disputes in Arbitration, 77 Fed. Reg. 15,824 (Mar. 12, 2012) (hereinafter "SEC Order"). Rule 13201(b) of FINRA's Code of Arbitration Procedure for Industry Disputes now provides that "[a] dispute arising under a whistleblower

13

statute that prohibits the use of predispute arbitration agreements is not required to be arbitrated."

As explained above, however, 15 U.S.C. § 78u-6(h) is not "a whistleblower statute that prohibits the use of predispute arbitration agreements." The rule's inapplicability is confirmed by both the SEC Order and FINRA Regulatory Notice 12-21, which explains the rule change. In their discussion of the Dodd-Frank Act, both state that the Anti-Arbitration Provision "invalidate[s] predispute arbitration agreements *in the case of SOX whistleblower disputes*."[4] SEC Order, 77 Fed. Reg. at 15,824 (emphasis added); *accord* FINRA Regulatory Notice 12-21 at 2 (Apr. 2012). Nowhere do they mention the new Dodd-Frank cause of action for whistleblower retaliation.[5]

---

[4] "SOX" is an acronym for Sarbanes-Oxley.

[5] Khazin also contends that explicit language restricting the arbitration of Dodd-Frank retaliation claims is unnecessary because, according to the SEC, "under Section 29(a) [of the Securities Exchange Act of 1934], employers may not require employees to waive or limit their anti-retaliation rights." Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34,300, 34,304 (June 13, 2011). These rights do not, however, include the right to a judicial forum. The Supreme Court has unequivocally held that "Congress did not intend for § 29(a) to bar enforcement of all predispute arbitration agreements." *McMahon*, 482 U.S. at 238. We have considered Khazin's remaining arguments and find them to be without merit.

14

Even if the SEC and FINRA were to interpret the Anti-Arbitration Provision as covering Dodd-Frank claims, we would not be obligated to defer to their interpretation. The default rule articulated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), is that "[s]tatutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency." *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013). However, "[a]n agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms. Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the unambiguously expressed intent of Congress." *Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2445 (2014) (internal quotation marks omitted). Congress was not "silent" on the question of whether Dodd-Frank whistleblowers may avoid arbitration. By adding anti-arbitration provisions to certain statutes but not others, it expressed its intent unambiguously.

## III. Conclusion

Khazin's Dodd-Frank retaliation claim is not statutorily exempt from the arbitration agreement with TD. The District Court's order dismissing the complaint and compelling arbitration will therefore be affirmed on this ground.[6]

---

[6] Consequently, we express no opinion on whether the District Court properly concluded that the Anti-Arbitration Provision does not invalidate preexisting agreements.